**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| ASSOCIATED BUILDERS AND ) | |
| CONTRACTORS, INC. ) | |
| 4250 N. Fairfax Drive ) | |
| Arlington, VA 22203 ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. _____ |
| ) | |
| PATRICIA A. SHIU, sued in her official capacity, ) | |
| Director of Office of Federal Contract Compliance ) | |
| Programs (OFCCP) ) | **COMPLAINT FOR** |
| United States Department of Labor ) | **DECALARATORY AND** |
| Frances Perkins Building ) | **INJUNCTIVE RELIEF** |
| 200 Constitution Avenue ) | |
| Washington, D.C. 20210 ) | |
| ) | |
| THOMAS E. PEREZ, sued in his official capacity, ) | |
| Secretary ) | |
| United States Department of Labor ) | |
| Frances Perkins Building ) | |
| 200 Constitution Avenue ) | |
| Washington, D.C. 20210 ) | |
| ) | |
| UNITED STATES DEPARTMENT OF LABOR ) | |
| Frances Perkins Building ) | |
| 200 Constitution Avenue ) | |
| Washington, D.C. 20210, ) | |
| ) | |
| Defendants. ) | |

_____)

1.       Plaintiff ASSOCIATED BUILDERS AND CONTRACTORS, INC. ("ABC"),

seeks declaratory and injunctive relief against Defendants PATRICIA A. SHIU, in her official

capacity as Director of the Office of Federal Contract Compliance Programs ("OFCCP"),

THOMAS E. PEREZ, in his official capacity as Secretary of the United States Department of

1

Labor, and the UNITED STATES DEPARTMENT OF LABOR (collectively, "Defendants" or "OFCCP") for violating Federal law.

2.      This civil action seeks judicial review of Defendants' issuance of a new Rule entitled "Affirmative Action and Nondiscrimination Obligations of Contractors and Subcontractors Regarding Individuals With Disabilities," 41 C.F.R. Part 60-741, 78 Fed. Reg. 58682 (Sept. 24, 2013) (hereafter the "new Rule") (attached hereto).  The new Rule revises and supersedes current regulations implementing the affirmative action and nondiscrimination provisions of Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 ("Section 503"). Section 503 prohibits discrimination by covered federal contractors and subcontractors against individuals on the basis of disability, and requires such contractors to engage in "affirmative action to employ and advance in employment qualified individuals with disabilities." *Id*.

3.      In filing this Complaint, ABC does not take issue with the legitimate affirmative action and nondiscrimination objectives of Section 503.  ABC's government contractor members have made a longstanding commitment to affirmative action and nondiscrimination towards qualified individuals with disabilities.  ABC has encouraged its members to engage in affirmative action and nondiscriminatory practices towards qualified individuals with disabilities on government construction projects, and will continue to do so.

4.      ABC is compelled to challenge OFCCP's new Rule, however, because it imposes unprecedented, wasteful and burdensome data collection and utilization analysis requirements on government construction contractors, without statutory authority and in an arbitrary and capricious manner.  The challenged aspects of the new Rule do not increase work opportunities for the disabled but will instead have the opposite effect, as the new burdens imposed by the new Rule are likely to drive many construction contractors out of the market for government

construction services.  Hardest hit will be the many small businesses who currently provide construction services to the government but who lack the resources to meet the new Rule's burdensome requirements.  The new Rule exceeds the authority delegated to OFCCP by Congress, is unsupported by substantial evidence in the administrative record, and reverses longstanding precedent without any adequate explanation.   For each of these reasons, the Rule must be enjoined.

5.     More specifically, OFCCP's new Rule for the first time requires government contractors to engage in burdensome data collection and analysis with regard to their hiring and employment of disabled workers. *See* the new Part 60-741.44 and related provisions, discussed in detail below. In doing so, the agency has ignored longstanding differences between the construction industry and non-construction supply and service contractors. OFCCP has previously exempted the construction industry from similar forms of data collection and analyses, in the agency's own words, because construction contractors employ a uniquely "fluid and temporary" workforce. *See* OFCCP, *Technical Assistance Guide For Federal Construction Contractors*, at 7 (May 2009), available at www.dol.gov.

6.     Some, though not all, of the newly required data collection and analysis is being required by OFCCP in order to force construction contractors, along with contractors in non-construction supply and service industries, to meet a newly established "7% workforce utilization goal for individuals with disabilities."  *See* the new Part 60-741.45, discussed in detail below. This arbitrary goal is not authorized by Section 503, is unsupported by the administrative record, and fails to take into account the many differences between the construction industry workforce and those of other industries.

7.      By subjecting government contractors to arbitrary and unauthorized data collection and utilization requirements, the new Rule violates both the Rehabilitation Act and the Administrative Procedure Act ("APA").  By failing to acknowledge longstanding distinctions between construction and other industries, and by failing to explain its reversal of decades of policy in this regard, OFCCP has exacerbated its violations of both Acts.

8.      There is no evidence in the administrative record that government construction contractors are currently failing to meet their affirmative action obligations under Section 503. Nor is there any evidence in the administrative record that the newly compelled data collection and utilization analysis will in fact increase employment opportunities for disabled workers in the construction industry.  Finally, there is no statutory authority for OFCCP to impose such burdensome data collection or utilization analysis requirements in pursuit of an arbitrary utilization goal in the construction industry which fails to take into account the industry's unique hiring and employment practices.

9.      ABC seeks an order from this Court declaring unlawful, vacating, and enjoining implementation of the data collection and utilization analysis requirements of OFCCP's new Rule, insofar as they apply to government contractors in the construction industry, prior to the Rule's scheduled effective date of March 24, 2014.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 (Federal question jurisdiction) and the APA, 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof").

11.     Venue is proper in this Court under 28 U.S.C. § 1391(c) in that (i) Defendants reside in the District of Columbia, and (ii) a substantial part of the events giving rise to this claim occurred in the District of Columbia.

12.     This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the APA, 5 U.S.C. § 706.

## PARTIES

13.     Plaintiff ABC is a national trade association representing 22,000 members from more than 19,000 construction and industry-related firms. Founded on the merit shop philosophy, ABC and its 70 chapters help members win work and deliver that work safely, ethically and profitably for the betterment of the communities in which they work. ABC's membership represents all specialties within the U.S. construction industry and is comprised of many firms that perform government contracts covered by the new Rule.

14.     The great majority of ABC's contractor members are classified as small businesses by the Small Business Administration.[1]  Many such small business contractors who are members of ABC nevertheless employ more than 50 employees and perform federal contracts or subcontractors valued above $50,000 so as to be covered by the new Rule.  At the same time, ABC includes among its members many large construction companies who contract directly with the federal government in the successful construction of projects valued well above $50,000 and are also covered by the new Rule.  *Id.*

---

[1] This is consistent with the findings of the Small Business Administration that the construction industry has one of the highest concentrations of small business participation (more than 86 percent). *The Small Business Economy: A Report To The President*, U.S. Small Business Administration, Office of Advocacy (2009), at 8.

15.     ABC has standing to pursue this action on behalf of its members under the three-part test of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) ABC's members would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to ABC's organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of ABC's individual members.

16.     ABC's members would otherwise have standing to sue in their own right because imminent and irreparable harm will occur to all of ABC's government contractor members who are covered by the new Rule, unless DOL's new Rule is declared unlawful and enjoined by this Court.  The many ABC members who perform government contracts and subcontracts covered by the new Rule will be required to spend many hours and many dollars that they can ill afford to spend in efforts to come into compliance with the new Rule's unlawful and unprecedented data collection and analysis requirements, unless the new Rule is enjoined.

17.     The interests at stake are germane to ABC's principles, because one of ABC's core principles is to advance and protect the free enterprise system and open competition in both public and private procurements in the construction industry.  The new Rule unlawfully imposes burdensome data collection and analysis requirements on government contractors that will discourage competition for government procurements, particularly by small businesses who can least afford the significant new burdens being imposed by the new Rule.

18.     The claims asserted and relief requested by ABC do not require participation of individual ABC members, because ABC's Complaint is a facial challenge to the new Rule based upon the Rule's unlawful departure from the statutory authority delegated by Congress under Section 503. The Complaint also challenges the arbitrary and capricious nature of the new Rule, based upon the absence of substantial evidence supporting the Rule in the Administrative Record

and the failure of OFCCP to provide adequate explanation of its reversal of four decades of policy implementing Section 503's affirmative action requirements.  Finally, ABC's Complaint challenges the failure of the agency to comply with the Regulatory Flexibility Act.  The Complaint is entirely based on principles of law and the Administrative Record and thus requires no individual contractor participation.

19.     The Defendants, located in Washington, D.C. and sued in their official capacities, are charged with administration and enforcement of Section 503.  OFCCP has been delegated rulemaking authority to carry out these functions, consistent with the provisions of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*. (the "APA").

**STATUTORY AND REGULATORY FRAMEWORK PRIOR TO THE NEW RULE**

20.     Section 503 states in pertinent part:

> Any contract in excess of $10,000 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that the party contracting with the United States shall take affirmative action to employ and advance in employment qualified individuals with disabilities. The provision of this section shall apply to any subcontract in excess of $10,000 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States.   The President shall implement the provisions of this section by promulgating regulations ….

Pub. L. 93-112, 87 Stat. 355, enacted September 26, 1073, codified at 29 U.S.C. § 793.

21.     Nowhere in this or any other provision of the Rehabilitation Act did Congress authorize the President or the OFCCP (the agency to whom the President has delegated his regulatory authority) to require government contractors covered by the Act to engage in any data collection or utilization analysis with regard to the hiring and/or employment of disabled

workers. Nor does the Act anywhere authorize the OFCCP to set numerical goals for the employment of disabled workers by government contractors.

22.     For the past four decades, prior to the new Rule, OFCCP implemented the affirmative action requirement of Section 503 by promulgating regulations that required all service and construction contracts above $10,000 to include clauses requiring contractors to take affirmative action to employ and advance in employment qualified individuals with disabilities. *See* 41 C.F.R. Part 60-741, at 741.5.

23.     In addition, for contractors who employ 50 or more employees and hold federal contracts of $50,000 or more, the OFCCP rules currently in effect require such contractors to prepare and maintain written "affirmative action programs" setting forth the employers' policies, practices and procedures for disabled applicants and employees. *Id*. at 741.40. Covered contractors are required to review and update their programs annually and make them available for inspection by employees and applicants upon request. *Id*. at 741.41.

24.     The required contents of the currently mandated affirmative action programs are specified in Section 741.44 of the OFCCP rule currently in effect. Under this rule, government contractors, including construction contractors, are currently required to state in writing their commitment to affirmative action policy statements, review of personnel processes, physical and mental qualifications, reasonable accommodation to physical and mental limitations, anti-harassment procedures, external disseminations of policies, outreach and recruitment, internal dissemination of policies, audit and reporting systems, responsibility for implementation, and training. *Id*.

25.     At no time during the past four decades, until now, has OFCCP deemed Section 503's "affirmative action" mandate to require government contractors in any industry, including

construction, to collect data on their hiring or employment of disabled workers nor to analyze that data to determine whether any particular utilization goal for such hiring or employment of disabled workers was being met. Section 503 contains no such requirement, and OFCCP has identified no Congressional authorization for this aspect of the new Rule.

26.     Congress has amended the Rehabilitation Act on numerous occasions during the past four decades, but at no time has Congress expressed dissatisfaction with OFCCP's current regulations implementing Section 503, or otherwise amended the Act to authorize any change in the Act's affirmative action requirements for government contractors.    By contrast, in 1974 Congress expressly required contractors to collect and report certain hiring and employment data relating to protected veterans under Section 4212 of the Vietnam Era Veterans Readjustment Assistance Act of 1974 ("VEVRAA"), 38 U.S.C. § 4212. No similar requirement appears in Section 503 of the Rehabilitation Act relating to disabled workers.

27.     There is no evidence in the administrative record that significant numbers of government contractors in the construction industry have failed to meet their affirmative action obligations under the previous OFCCP rule implementing Section 503.   Nor is there any evidence in the record that the previous rule failed to implement the statutory directive that government contractors engage in affirmative action, as set forth in Section 503.  Finally, there is no evidence in the record that imposition of burdensome data collection and utilization analysis requirements is necessary to achieve compliance with the limited Congressional directive set forth in Section 503.

## OFCCP'S NEW RULE

28.     OFCCP published a Notice of Proposed Rulemaking (NPRM) in the Federal Register on December 9, 2011 seeking comments on its proposed changes to the agency's longstanding affirmative action regulations implementing Section 503 of the Act. 76 Fed. Reg.

77056 (Dec. 9, 2011).  After extension of the comment period, OFCCP received more than 400 comments on the NPRM, including comments in opposition to the proposed rule from ABC and several other construction industry associations and contractors.  *See, e.g.*, A.R., Comments of ABC dated Feb. 24, 2012.

29.     The construction industry comments emphasized in particular that OFCCP had previously recognized the uniquely fluid and temporary nature of the construction industry workforce and that the construction industry is uniquely physical and hazardous. ABC and others pointed out that for these reasons OFCCP had previously deemed construction contractors to be exempt from information collection and utilization analysis requirements of other affirmative action rules similar to the requirements of the proposed new Rule. *See* OFCCP, *Technical Assistance Guide For Federal Construction Contractors* (May 2009), available at www.dol.gov. The construction industry comments also challenged OFCCP's proposal to impose an arbitrary 7% goal on all contractors, regardless of the longstanding differences between the construction industry and other industries, and without any statutory authority.  *See* Comments of ABC dated Feb. 24, 2012.

30.     Although the final Rule withdrew a number of proposed provisions from the NPRM to which many commenters had objected, OFCCP refused to acknowledge the unique burdens imposed by the new Rule on the construction industry. Without any rational explanation, OFCCP also refused to exempt construction contractors from the burdensome and unauthorized data collection and utilization requirements of the new Rule, which have never previously been applied to the disability regulations under Section 503.  The Final new Rule was published on September 24, 2013 in its current form.

31.     The provisions of the new Rule that are being challenged by ABC begin with the revised section 741.40, which redefines the term "Affirmative Action Program" (AAP), which all government contractors employing 50 employees on contracts of more than $50,000 are required to maintain.  For the first time, OFCCP declares in the new Rule that such AAP's must include "measurable objectives, quantitative analyses, and internal auditing and reporting systems that measure the contractor's progress toward achieving equal employment opportunity for individuals with disabilities."  *Id.*  None of these new requirements appear in the governing statute.

32.     Section 741.42(a) of the new Rule adds a new requirement that covered contractors must invite all job applicants to voluntarily inform the contractor whether they are disabled before they receive offers of employment.  Again, no such requirement appears in Section 503.  In addition, absent case-by-case analysis of each applicant's alleged disability and the job to which they are applying, construction contractors (and OFCCP) will be unable to determine as part of their data collection whether such self-identifying individuals are in fact qualified to perform the particular jobs for which they are applying.  Thus, the new Rule's pre-offer self-identification requirement will result in a burdensome collection of data that will ultimately be meaningless with regard to construction contractors' compliance with Section 503.

33.     Section 741.44(k) of the new Rule creates an entirely new element for all Affirmative Action Programs covered by the new Rule, which is again mentioned nowhere in Section 503, called "data collection analysis."  This new provision requires contractors to "document the following computations or comparisons pertaining to applicants and hires on an annual basis" (to be kept for three years): (1) The number of applicants who self-identified as individuals with disabilities pursuant to 741.42(a) or who are otherwise known to be individuals

with disabilities; (2) The total number of job openings and total number of jobs filled; (3) The total number of applicants for all jobs; (4) The number of applicants with disabilities hired; and (5) The total number of applicants hired. *Id*.

34.     According to the OFCCP's "Summary and Preamble to the Final Rule," 78 Fed. Reg. at 58702, contractors are expected to review the collected data for the past two years to "assess trends related to the contractor's outreach and recruitment efforts."  The OFCCP further states that "compliance determinations" for the foregoing data collection and analysis will be made based on "whether the contractor has completely and accurately documented and maintained the listed metrics in the final Rule. *Id*.  Finally, OFCCP states that compliance officers will "look to see whether the contractor has critically analyzed and assessed the effectiveness of its recruitment efforts," using the data in subparagraph (k) "and any other reasonable criteria." *Id*.  Contractors are then expected to "pursue additional efforts if those were not effective." *Id*.

35.     Section 741.45 of the new Rule establishes for the first time a nationwide, all-industries utilization goal of 7% for government contractors' utilization of qualified individuals with disabilities. According to the new Rule,  contractors with more than 50 employees and federal contracts of more than $50,000 are expected to meet the goal by utilizing qualified individuals with disabilities as 7% of the contractors' entire workforce.   Again, Section 503 authorizes no such utilization goal of any kind.

36.     Section 741.45(d)(2) states that covered contractors who employ more than 100 employees are required to meet the new 7% goal on a "job group" basis, a concept which has never before been applied to the construction industry for any affirmative action purpose. This section of the new Rule states that contractors should "use the same job groups established for

utilization analyses under Executive Order 11246." But OFCCP's regulations implementing Executive Order 11246, which set forth affirmative action requirements for minorities and women, expressly <u>exempt</u> construction industry government contractors from having to perform any job group (or other) utilization analysis, directly contradicting the foregoing provision of the new Rule. *See* 41 C.F.R. Part 60-4. Notwithstanding this contradiction, Section 741.45(d)(2) of the new Rule requires covered contractors to conduct a "utilization analysis" annually "designed to evaluate the representation of individuals with disabilities in each job group."

37.     Section 741.45(e) of the new Rule states that "when the percentage of individuals with disabilities in a job group does not meet the utilization goal," the contractor "must take steps to determine whether and where impediments to equal employment opportunity exist." These steps include an assessment of personnel processes, evaluation of outreach and recruitment efforts, and results of the affirmative action program audit that is required under Section 741.44(h). Section 741.45(f) requires that "the contractor must develop and execute action-oriented programs designed to correct any identified problem areas."

38.     Sections 741.45(g) and (h) state that the newly required utilization goal is not a "quota" and that failure to meet the goal is not an admission of discrimination. However, failure to comply with the audit requirement of 741.44(h), the analysis requirements of 741.44(k) and 741.45(d) and (e), and the action step requirements of 741.45(f) may be grounds for penalties up to and including debarment from government contracts. *See* Section 741.65. None of the foregoing requirements are referenced or otherwise authorized by the Section 503 of the Rehabilitation Act.

39.     To the extent that other provisions of the new Rule incorporate by reference or are otherwise dependent on the foregoing unlawful provisions, they too are unlawful and must be set aside.

### UNIQUE ASPECTS OF THE CONSTRUCTION INDUSTRY WORKFORCE PREVIOUSLY RECOGNIZED BY OFCCP, WHICH THE NEW RULE IGNORES

40.     As noted above, OFCCP has recognized for more than four decades that the construction industry workforce is uniquely "fluid and temporary," compared to non-construction supply and service contractors. *See, e.g.,* OFCCP, *Technical Assistance Guide For Federal Construction Contractors*, at 7 (May 2009), available at http://www.dol.gov.   As a result, OFCCP has expressly exempted the construction industry from the types of utilization analysis and statistical data collection that are imposed under the new Rule, with regard to the only other utilization requirements that currently exist – specifically the utilization requirements of Executive Order 11246.  *Id.*   As is further reflected in comments in the Administrative Record, work in the construction industry is typically project-based, transitory and seasonal.  The number of workers in construction establishments varies widely from day to day and from project to project.   Workers are frequently reassigned from one establishment to another depending on constantly shifting labor needs.

41.     The tracking and analysis of hiring and employment data by construction contractors is even more problematic with regard to disabled workers and applicants than for minorities and women, because construction work is uniquely hazardous and physical compared to other industries.  In this environment, decisions to hire and/or employ disabled individuals must be made on a case by case basis, without regard to statistics, in order to determine the ability of each individual to perform the essential functions of particular construction jobs, with or without reasonable accommodation.  Contractors are also required to determine on a case by

14

case basis whether employment of disabled workers endangers the safety of such workers or their coworkers, or the public at large. *See* Comments in the Administrative Record filed by ABC and other construction industry representatives.

42.     As is further reflected in the administrative record, construction contractors are uniquely decentralized compared to other industries.  Of necessity, most construction contractors maintain numerous "establishments" located at construction job sites, where hiring and day-to-day employment decisions are made without direct involvement of central office staff.  Indeed, most construction contractors are small businesses who do not have significant numbers of staff dedicated to human resource matters, particularly at dispersed establishment locations.  Many construction contractors will be simply unable to track and analyze the newly required hiring and utilization data, and the analysis will shed no light on the contractors' good faith affirmative action efforts towards disabled workers. *Id*.

43.     As further noted above, because construction contractors have always been exempt from "job group" utilization analysis under Executive Order 11246, they have no experience with defining such job groups, unlike non-construction service contractors.  The OFCCP ignored this important distinction in its new Rule, repeatedly stating that the impact of the new Rules would be mitigated by the fact that contractors could apply the same job group analyses that they have already established under the Executive Order for minorities and women. This claim by the agency is simply untrue with regard to the construction industry.

44.     Finally, as noted above, a high percentage of construction contractors, and a high percentage of ABC's government contractor membership, are small businesses.  As such, they are supposed to be given preference in the award of government contracts without being subject to the same burdens that may be imposed on larger firms. *See* 15 U.S.C. § 637(d).

## CLAIMS FOR RELIEF

**COUNT I – Agency Action Exceeding Statutory Authority Under The Rehabilitation Act**

45.     ABC incorporates by reference the allegations contained in Paragraphs 1 through 44 of this Complaint, as though fully set forth below.

46.     Neither the plain language nor legislative history of Section 503 of the Rehabilitation Act reveals any Congressional delegation of authority to OFCCP to establish any "utilization goal" for government contractors with regard to the number of disabled workers to be employed by them, nor does the statute authorize the agency to require contractors to collect and analyze burdensome and meaningless data relating to the number of allegedly disabled applicants and employees who may or may not be qualified to perform the essential elements of the jobs offered by government contractor employers.

47.     By declaring that all government contractors in the construction industry must henceforward meet an arbitrary goal of 7% qualified individuals with disabilities in their workforces, without regard to long recognized distinctions between construction contractors and every other type of government contractor, and without regard to geographic and other distinctions, the OFCCP has exceeded its statutory authority under the Rehabilitation Act.

48.     OFCCP has further exceeded its statutory authority under the Rehabilitation Act by imposing burdensome and meaningless data collection and analytical requirements on government contractors in the construction industry with regard to self-identifying, known, and unknown disabled applicants and employees.

49.     By the foregoing actions, the new Rule is arbitrary, capricious, an abuse of discretion and not in accordance with the Rehabilitation Act and the APA, and must therefore be set aside.  *See* 29 U.S.C. § 793;  5 U.S.C. § 706.  To the extent that additional provisions of the

new Rule incorporate or otherwise rely on the foregoing specifically challenged sections of the new Rule, then all such provisions are unlawful and must be set aside.

**COUNT II – Agency Failure To Provide Rational Explanation For Reversals Of Policy**

50.    ABC incorporates by reference the allegations contained in Paragraphs 1 through 49 of this Complaint, as though fully set forth below.

51.    OFCCP has failed to give any adequate, rational explanation for its refusal to exempt the construction industry from the burdensome data collection and utilization analyses described above, as the agency has otherwise done for the past four decades.  OFCCP has also failed to acknowledge or address longstanding differences between the unique hiring and employment practices of the construction industry and all other industries, by imposing a uniform nationwide disability utilization goal for all industries and all geographic locations, as described in detail above.

52.    By reversing decades of policy and precedent without any adequate explanation, and by imposing burdensome data collection and utilization analysis requirements on construction contractors without any substantial evidence in the record supporting such unprecedented requirements, the Defendants have acted in an arbitrary and capricious manner in violation of the APA.  5 U.S.C. § 706.  To the extent that additional provisions of the new Rule incorporate or otherwise rely on the foregoing specifically challenged sections of the new Rule, then all such provisions are unlawful and must be set aside.

**COUNT III – Agency Failure To Comply With The Regulatory Flexibility Act and Small Business Act**

53.    ABC incorporates by reference the allegations contained in Paragraphs 1 through 52 of this Complaint, as though fully set forth below.

54.     OFCCP has failed to conduct an adequate cost-benefit analysis that complied with the Regulatory Flexibility Act (RFA), as amended by the Small Business Regulatory Enforcement Fairness Act (SBREFA), 5 U.S.C. §§ 601-611, which is a factor showing that the agency unreasonably assessed social costs and benefits so as to be arbitrary and capricious under the APA.  In particular, OFCCP dramatically understated the burden that its new requirements will impose on government contractors in the construction industry.  OFCCP also improperly certified that the new Rule will not have a significant economic impact on a substantial number of small businesses and failed to act in a manner consistent with the Congressional mandate to give preferences in government procurement to small businesses.  15 U.S.C. § 637(d).  OFCCP has thereby violated the foregoing statutory provisions in a manner which is subject to judicial review under the APA.

## PRAYER FOR RELIEF

Wherefore, ABC respectfully requests this Court to enter judgment in its favor and:

1.      Issue an injunction barring Defendants from enforcing or applying those portions of OFCCP's new Rule that impose unauthorized or otherwise unlawful data collection and/or utilization analysis requirements and/or goals on construction contractors;

2.      Declare that the provisions of the new Rule described above violate the Rehabilitation Act, the APA, and/or the RFA;

3.      Declare that the new Rule is arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law;

4.      Vacate and set aside the provisions of the new Rule shown to be unlawful in this Complaint and any related provisions that cannot be lawfully severed therefrom;

5.      Award ABC its costs of litigation, including reasonable attorneys' fees; and

6.      Grant ABC such other relief as may be necessary and appropriate or as the Court

deems just and proper.

Respectfully submitted,


*/s/ Maurice Baskin*
Maurice Baskin (D.C. Bar  No. 248898)
Littler Mendelson, P.C.
1150 17th St., N.W.
Washington, D.C. 20036
202.772.2526  Telephone
202.842.0011 Facsimile
mbaskin@littler.com

Attorney for Plaintiff ABC